*In the United States District Court*
*for the Northern District of Illinois*
*Eastern Division*

| | |
|---|---|
| James D. Larson, | |
| plaintiff, | |
| – v – | **Jury trial demanded** |
| Motor Werks of Barrington, Inc., a Delaware corporation, | |
| defendant. | |

## Verified Complaint of Discrimination and Retaliation

### Nature of action and verification of Complaint

1.     This Complaint alleges discrimination on the basis of disability, perception of disability, and/or record of disability (atrial fibrillation and/or throat cancer requiring replacement of the larynx by an indwelling prosthesis of the esophagus) and/or discrimination on the basis of age (73 & ½) and/or retaliation or interference in violation of the Family and Medical Leave Act.

2.     Plaintiff's Verification of paragraphs 3 through 30 of this Verified Complaint is attached as Exhibit A.

### Parties

3.     Plaintiff is James D. Larson.

4.     Defendant is Motor Werks of Barrington, Inc., a Delaware corporation.

### Mr. Larson's career

5.     On or about October 10, 2011, defendant hired Mr. Larson as a car salesman.

6.     When defendant hired Mr. Larson, it knew that, since the 1980's, Mr. Larson had successfully managed luxury car dealerships and sold luxury automobiles.

7.       When defendant hired Mr. Larson, it knew that, in the 1980's, Mr. Larson was recognized as one of the top five Mercedes Benz General Managers in the country. Around that time, Mr. Larson was selected to spearhead the introduction of the Infiniti line to the United States, which he did at a Highland Park Infiniti dealership. While Mr. Larson was General Manager of that dealership, it achieved the highest customer satisfaction index in the country, and he was again recognized as one of the nation's top auto-dealership GM's.

8.       When defendant hired Mr. Larson, it knew that, after a brief time in the financial-services industry, Mr. Larson had returned to the car industry and had successfully managed Dodge of Barrington.

9.       Before defendant fired Mr. Larson, it knew that Mr. Larson had developed strong relationships with many of defendant's clients at its Land Rover of Hoffman Estates location (where defendant had assigned Mr. Larson from 2011 until his hospitalization) and had many repeat customers.

10.       Before defendant fired Mr. Larson, it knew that Mr. Larson catered the car-buying experience to both car aficionados and the average customer and anticipated each customer's unique needs.

11.       Before defendant fired Mr. Larson, it knew that some of Mr. Larson's customers has said that they had bought from defendant because of Mr. Larson. The allegations of this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

12.       Before defendant learned that Mr. Larson had been hospitalized, defendant had expressed no dissatisfaction with Mr. Larson's job performance.

13.     Before defendant learned that Mr. Larson had been hospitalized, the supervisors to whom defendant assigned Mr. Larson had praised and/or complimented Mr. Larson's work.

14.     Defendant's legitimate workplace expectations were met or exceeded by Mr. Larson.

## Defendant learns of Mr. Larson's hospitalization and medical condition

15.     Around January 18, 2013, defendant learned that Mr. Larson had been admitted to the hospital and was undergoing medical testing.

16.     Mr. Larson was hospitalized for four days.

17.     Defendant ultimately learned that Mr. Larson had been diagnosed with atrial fibrillation.

18.     Due to the severity of Mr. Larson's condition, he has since undergone repeat hospital visits and has received multiple rounds of therapy to electrically shock his heart back to a normal rhythm.

19.     Defendant also knew that Mr. Larson had an indwelling prosthesis of the esophagus.

20.     Mr. Larson has an indwelling prosthesis of the esophagus to enable him to speak, because his larynx was removed due to throat cancer.

21.     During Mr. Larson's hospitalization in January 2013, defendant's General Manager spoke to Mr. Larson about Mr. Larson's job and assured Mr. Larson that Mr. Larson would have no problems returning to work.

22.     Mr. Larson returned to work on January 25, 2013.

23.     When Mr. Larson returned to work or soon thereafter, defendant suspected

that he would be requesting and/or needing reasonable accommodations. The allegations of this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

24.     When Mr. Larson returned to work or soon thereafter, defendant suspected that he would be requesting and/or needing in the future medical leave, including possibly medical leave under the Family and Medical Act. The allegations of this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

25.     Defendant did not communicate with Mr. Larson nor with his doctors to see what, if any, reasonable accommodations could be implemented for Mr. Larson given his circumstances.

**Defendant's knowledge of Mr. Larson's age**

26.     When Mr. Larson returned to work from his January 2013 hospitalization, defendant knew that Mr. Larson was in approximately his early 70's.

27.     In fact, Mr. Larson was approximately 73 & ½ years old at that time.

28.     Defendant's General Manager Mick Austin said in a manager's meeting that defendant was going to get rid of all the "old guys". The allegations of this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

29.     Within a few months before and after defendant chose fire Mr. Larson, it fired many other employees over the age of sixty, including Phil Stallone and Craig Siegel.

**Defendant fires Mr. Larson**

30.　　　Defendant fired Mr. Larson six days after he returned to work from his January 2013 hospitalization.

**Venue**

31.　　　Mr. Larson worked for the defendant in the Northern District of Illinois, and this cause of action arose in that District.  Venue is proper by § 1391(b) of the Judicial Code [28 U.S.C. § 1391(b)].

# Count I − Disability Discrimination

32.　　　Mr. Larson realleges paragraphs 1 through 31 of this Verified Complaint.

**Jurisdiction**

33.　　　This Court has jurisdiction of this Count under § 107(a) of the Americans with Disabilities Act of 1990, as amended [42 U.S.C. § 12117(a)], incorporating § 706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended, [42 U.S.C. § 2000e-5(f)(3)], and under §§ 1331 and 1343 of the Judicial Code [28 U.S.C. §§ 1331 and 1343].

**Mr. Larson's disability**

34.　　　The ADA Amendments Act of 2008 applies to Mr. Larson's ADA claims, because defendant's actions and omissions giving rise to those claims took place in 2013, which was after the effective date of that Act.  Pub. L. 110−325, §8, 122 Stat. 3553 (Sep't 25, 2008), *codified at*, *e.g*., 42 U.S.C. § 12101 (Note).

35.　　　Under the ADA Amendments Act of 2008, disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent

permitted by the terms of this chapter". 42 U.S.C. § 12102(4)(A).

36.     Under the ADA Amendments Act of 2008, Mr. Larson's disability must be assessed in its active state, without regard to mitigating measures like medical treatments, equipment, prosthetics, and assistive technology. 42 U.S.C. § 12102(4)(E)(i), (ii); 29 C.F.R. § 1630.2(j)(1)(vi).

37.     The ADA Amendments Act of 2008 expressly defines "major life activities" to include "caring for oneself, performing manual tasks, ... eating, sleeping, walking, standing, lifting, bending, speaking, breathing [and/or] working". 42 U.S.C. § 12102(2)(B).

38.     Mr. Larson's physiological impairments in their active states, without regard to mitigating measures like medical treatments, equipment, prosthetics, and assistive technology, substantially interfered with his major life activities of "caring for oneself, performing manual tasks, ... eating, sleeping, walking, standing, lifting, bending, speaking, breathing [and/or] working".

39.     The ADA Amendments Act of 2008 also expressly defines "major life activities" to include "major bodily functions" including, but not limited to, "circulatory" and "normal cell growth" functions. 42 U.S.C. § 12102(2)(B).

40.     Mr. Larson's physiological impairments in their active states, without regard to mitigating measures like medical treatments, equipment, prosthetics, and assistive technology, substantially interfered with the major bodily functions of circulatory function and normal cell growth.

41.     Mr. Larson's physiological impairments in their active states, without regard to mitigating measures like medical treatments, equipment, prosthetics, and

assistive technology, were debilitating.

## ADA coverage

42.     When defendant employed Mr. Larson, defendant was an "employer" within the definition of § 101(5) of the Americans with Disabilities Act of 1990, as amended [42 U.S.C. § 12111(5)].

43.     When defendant fired Mr. Larson, Mr. Larson was an "employee" of defendant's within the definition of § 101(4) of the Americans with Disabilities Act of 1990, as amended [42 U.S.C. § 12111(4)] and a "qualified individual with a disability" within the definition of § 101(8) of the Americans with Disabilities Act of 1990, as amended [42 U.S.C. § 12111(8)].

44.     Mr. Larson has fulfilled all conditions precedent to the bringing of these ADA claims.  His Charge of Discrimination filed with the Equal Employment Opportunity Commission is attached to this Verified Complaint as Exhibit B, and his Notice of Right to Sue on that Charge is attached to this Verified Complaint as Exhibit C.

## Disability discrimination

45.     Defendant, by firing Mr. Larson and/or by refusing to accommodate his medical condition, discriminated against Mr. Larson on the basis of his disability and/or perceived disability and/or record of disability.

## Damages

46.     As a proximate result of defendant's discrimination against Mr. Larson on the basis of his disability and/or perceived disability and/or record of disability, Mr. Larson lost his job, lost wages, lost employee benefits, and suffered the type of

emotional distress people normally suffer when they lose their jobs and/or are discriminated against, commonly called "garden-variety emotional distress".

47.    Defendant discriminated against Mr. Larson with malice or reckless indifference to his federally protected rights.

48.    To deter future malice or reckless indifference to the federally protected rights of employees by defendant and/or by other employers and to punish defendant for its malice or reckless indifference to the federally protected rights of Mr. Larson, exemplary damages should be awarded.

**Wherefore**, plaintiff James D. Larson prays for:

a.    A settlement conference pursuant to Federal Rule of Civil Procedure 16 to assist him and defendant to settle this case;

b.    An Order requiring defendant to post notices concerning its duty to refrain from discriminating against its employees in violation of the Americans with Disabilities Act, as amended;

c.    An Order enjoining defendant from discriminating against its employees in violation of the Americans with Disabilities Act, as amended;

d.    Back pay, employment benefits, and other compensation lost to him as a result of defendant's discriminating against him in violation of the Americans with Disabilities Act, as amended;

e.    Prejudgment interest at the prevailing rate on the award of back pay, lost employment benefits, and other compensation lost to him as a result of defendant's discriminating against him in violation of the Americans with

Disabilities Act, as amended;

f.      Reinstatement to his job or to a substantially-similar job or pay for a

reasonable time into the future in lieu of reinstatement;

g.      Compensatory damages for the harm he suffered as a result of defendant's

discriminating against him in violation of the Americans with Disabilities Act,

as amended;

h.      Exemplary damages;

i.      Reasonable attorney's fees, expert witness fees, expenses, and costs of this

action and of prior administrative actions; and

j.      Such other relief as this Court deems just and appropriate.

# Count II – Age Discrimination

49.     Mr. Larson realleges paragraphs 1 through 31 of this Verified Complaint.

## Jurisdiction

50.     This Court has jurisdiction of this Count under § 7(b) of the Age

Discrimination in Employment Act of 1967, as amended [29 U.S.C. § 626(b)] and

under § 1331 of the Judicial Code [28 U.S.C. § 1331].

## ADEA coverage and conditions precedent

51.     When defendant employed Mr. Larson, defendant was an "employer" within

the definition of § 11(b) of the Age Discrimination in Employment Act of 1967, as

amended [29 U.S.C. § 630(b)].

52.     When defendant fired Mr. Larson, Mr. Larson was an "employee" of

defendant's within the definition of § 11(f) of the Age Discrimination in Employment

Act of 1967, as amended [29 U.S.C. § 630(f)].

53.     Mr. Larson has fulfilled all conditions precedent to the filing of this age-discrimination claim.  His Charge of Discrimination is attached to this Verified Complaint as Exhibit B, and his Notice of Right to Sue and the envelope in which it was mailed are attached to this Verified Complaint as Exhibit C.

## Age discrimination

54.     Defendant, by firing Mr. Larson, discriminated against Mr. Larson on the basis of his age in violation of Age Discrimination in Employment Act of 1967, as amended.

## Damages

55.     As a proximate result of the age discrimination alleged in this Verified Complaint, Mr. Larson lost his job, lost wages, and lost employment benefits.

*Wherefore*, plaintiff James D. Larson prays for:

a.      A settlement conference pursuant to Federal Rule of Civil Procedure 16 to assist him and defendant to settle this case;

b.      An Order requiring defendant to post notices concerning its duty to refrain from discriminating against its employees in violation of the Age Discrimination in Employment Act, as amended;

c.      An Order enjoining defendant from discriminating against its employees in violation of the Age Discrimination in Employment Act, as amended;

d.      Back pay, employment benefits, and other compensation lost to him as a result of defendant's discriminating against him in violation of the Age

Discrimination in Employment Act, as amended;

e.       Liquidated damages doubling the award of back pay, employment

benefits, and other compensation lost to him as a result of defendant's

discriminating against him in violation of the Age Discrimination in

Employment Act, as amended;

f.       Reinstatement to his job or to a substantially-similar job or pay for a

reasonable time into the future in lieu of reinstatement;

g.       Reasonable attorney's fees, expert witness fees, expenses, and costs of this

action and of prior administrative actions; and

h.       Such other relief as this Court deems just and appropriate.

# Count III − Family and Medical Leave Interference

56.       Mr. Larson realleges paragraphs 1 through 31 of this Verified Complaint.

## **Jurisdiction**

57.       This Court has jurisdiction of this Count under §107(a)(2) of the Family and

Medical Leave Act of 1993, as amended, [29 U.S.C. §2617(a)(2)] and under §1331 of

the Judicial Code [28 U.S.C. §1331].

## **FMLA coverage**

58.       When defendant employed Mr. Larson, defendant was an "employer" within

the definition of §101(4)(A) of the Family and Medical Leave Act of 1993 [29 U.S.C.

§2611(4)(A)].

59.       When defendant fired Mr. Larson, Mr. Larson was an "eligible employee"

within the definition of §101(2) of the Family and Medical Leave Act of 1993

[29 U.S.C. §2611(2)].

60.       Defendant willfully violated the Family and Medical Leave Act of 1993.

**FMLA interference**

61.       Defendant, by firing Mr. Larson, interfered with his exercise of his future rights under the Family and Medical Leave Act of 1993 in violation of the anti-interference provision of §105(a) of the Family and Medical Leave Act of 1993 [29 U.S.C. §2615(a)].

**Damages**

62.       As a proximate result of this Family and Medical Leave Act interference, Mr. Larson lost his job, lost wages, lost employment benefits, and lost Family and Medical Leave Act rights.

*Wherefore*, plaintiff James D. Larson prays for:

    a.       A settlement conference pursuant to Federal Rule of Civil Procedure 16 to assist him and defendant to settle this case;

    b.       Back pay, employment benefits, and other compensation lost to him as a result of defendant's interference with his rights under the Family and Medical Leave Act of 1993;

    c.       Prejudgment interest at the prevailing rate from the date his rights under the Family and Medical Leave Act were interfered with to the date of judgment on the award of back pay, employment benefits, and other compensation lost to him as a result of defendant's interference with his rights under the Family and Medical Leave Act of 1993;

d.      Liquidated damages doubling the award of pre-judgment interest, back pay, employment benefits, and other compensation lost to him as a result of defendant's interference with his rights under the Family and Medical Leave Act of 1993;

e.      Reinstatement to his job or to a substantially-similar job or pay for a reasonable time into the future in lieu of reinstatement;

f.      Reasonable attorney's fees and the costs and expenses of this action; and

g.      Such other relief as this Court deems just and appropriate.

# Count IV – Family and Medical Leave Retaliation

63.      Mr. Larson realleges paragraphs 56 through 60 of this Verified Complaint.

**FMLA retaliation**

64.      Defendant, by firing Mr. Larson, retaliated against him and/or discriminated against him for his exercise of his rights under the Family and Medical Leave Act of 1993 in violation of the anti-interference and anti-discrimination provisions of §105(a) of the Family and Medical Leave Act of 1993 [29 U.S.C. §2615(a)] and/or in violation of the Department of Labor's anti-retaliation and anti-discrimination regulation [29 C.F.R. §825.220].

**Damages**

65.      As a proximate result of this Family and Medical Leave Act retaliation, Mr. Larson lost his job, lost wages, lost employment benefits, and lost Family and Medical Leave Act rights.

***Wherefore***, plaintiff James D. Larson prays for:

a.      A settlement conference pursuant to Federal Rule of Civil Procedure 16 to assist him and defendant to settle this case;

b.      Back pay, employment benefits, and other compensation lost to him as a result of defendant's retaliating against him in violation of the Family and Medical Leave Act of 1993;

c.      Prejudgment interest at the prevailing rate from the date he was retaliated against in violation of the Family and Medical Leave Act to the date of judgment on the award of back pay, employment benefits, and other compensation lost to him as a result of defendant's retaliation against him in violation of the Family and Medical Leave Act of 1993;

d.      Liquidated damages doubling the award of pre-judgment interest, back pay, employment benefits, and other compensation lost to him as a result of defendant's retaliation against him in violation of the Family and Medical Leave Act of 1993;

e.      Reinstatement to his job or to a substantially-similar job or pay for a reasonable time into the future in lieu of reinstatement;

f.      Reasonable attorney's fees and the costs and expenses of this action; and

g.      Such other relief as this Court deems just and appropriate.

# Jury Demand

Plaintiff James D. Larson hereby demands a trial by jury on all claims so triable.

| | |
|---|---|
| David L. Lee, ARDC #1604422 | James D. Larson, |
| Jennifer Claire Weiss, ARDC #6291035 | plaintiff, |
| LAW OFFICES OF DAVID L. LEE | |
| 53 W. Jackson Blvd., Suite 801 | By:      /s/David L. Lee |
| Chicago, IL 60604 | David L. Lee |
| staff@davidleelaw.com | One of his Attorneys |
| 312-347-4400 | |